UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEARL COLEMAN, et. al., | No. 1:24-cv-00659-KES-HBK |
| Plaintiffs, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| COUNTY OF KINGS, et. al., | |
| Defendants. | (Doc. No. 15) |

This matter is before the court on the motion to dismiss filed by defendants County of Kings; Kings County Sheriff, Corner, and Public Administrator David Robinson; and Kings County Deputy Coroners Wayne Brabant and Barbara Blackburn (collectively "defendants") on September 24, 2024. (Doc. 15.) On October 30, 2024, the motion to dismiss was taken under submission. (Doc. 19.) For the reasons explained below, defendants' motion is granted.

**BACKGROUND**

Plaintiffs Pearl Coleman, Mitchell Snell, Mamie Johnson, and Marie Snell filed a complaint initiating this action on June 4, 2024.[1] (Doc. 1.) Plaintiffs allege the following:

Plaintiffs are the surviving siblings of the decedent, Darrell Snell ("Snell"), who died on

---

[1] The Court presumes the factual allegations in the complaint to be true in evaluating the motion to dismiss. *See Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023).

1

June 27, 2022, at the age of 57 following a "sudden and uncharacteristic collapse."[2] (*Id.* at ¶¶ 3, 10.) Snell was an extremely healthy man. (*Id.* at ¶ 8.) He had spent a career in the military and maintained a disciplined exercise regimen throughout his life. (*Id.*) At the time of his death, Snell was 6'2" in height, weighed 215 pounds, and was "trim and muscular." (*Id.*) When the authorities were first notified, Snell's collapse was represented to be a possible stroke. (*Id.* at ¶ 10.) However, Snell had no history or predictive factors that would have rendered him susceptible to a stroke. (*Id.*) Plaintiffs traveled to California but could not obtain answers regarding the circumstances of Snell's death.[3] (*Id.* at ¶ 11.) Their initial communications with family and law enforcement indicated that Snell had suffered a fatal aneurysm, but this turned out to be inaccurate. (*Id.* at ¶ 12.) The complaint asserts that "[t]here is a cloud of mystery regarding whether and the extent to which Darrell's death was investigated." (*Id.* at ¶ 9.)

Plaintiffs had received information that Snell was preparing to divorce his spouse, Stefanie Snell; they attempted to communicate with her regarding the circumstances of Snell's death, but Stefanie Snell was initially only "cryptically communicative" and later cut off all communication with plaintiffs. (*Id.* at ¶ 11.) Plaintiffs fared no better with defendant Deputy Coroner Brabant, who was "extremely evasive and refused to provide any specific coherent information" other than repeatedly telling plaintiffs the matter was under investigation. (*Id.* at ¶ 13.) Snell's initial death certificate, dated July 6, 2022, listed the cause of death as "pending."[4] (*Id.* at ¶ 14.) According to plaintiffs, "[t]his initial death certificate indicates that Darrell had

---

[2] The decedent, Darrell Snell, and several other individuals referenced in the complaint share the last name Snell. To avoid confusion, this Order refers to Darrell Snell as "Snell" except when quoting the complaint, which refers to him as Darrell; the Order refers to the other individuals by their full names.

[3] Coleman, Johnson, and Marie Snell are all adult citizens and residents of the State of Mississippi; Mitchell Snell is an adult citizen and resident of the State of Michigan. (*Id.* at ¶ 3.)

[4] Plaintiffs allege that the initial death certificate was signed by "Deputy Coroner Bryant" (*Id.* at ¶ 14) who is not named as a defendant in the complaint; however, the next allegation states that an "amended certificate was also signed by Deputy Coroner Brabant." (*Id.* at ¶ 15.) The Court assumes this inconsistency is due to a typographical error and that the complaint intended to allege that Deputy Coroner Brabant signed the initial death certificate. In any event, the signatory of the initial death certificate does not affect the analysis below.

1     already been embalmed and had his body turned over to the funeral home, indicating that if any
2     death investigation had been done, the tasks had already been completed by July 6, 2022." (*Id.*)
3     Plaintiffs were told that the investigation was pending even after July 6, 2022. (*Id.*)

4       On July 27, 2022, an amended death certificate signed by Brabant was issued indicating
5     that Snell died due to hypertensive cardiovascular disease. (*Id.* at ¶ 15.) Snell had no history of
6     hypertension or heart disease. (*Id.*) Plaintiffs did not receive a copy of either death certificate
7     until "months later." (*Id.* at ¶¶ 14, 15.) In late July or early August 2022, plaintiffs learned from
8     their nephew Deshawn Snell that Snell had reportedly died from hypertension. (*Id.* at ¶ 16.)
9     Deshawn Snell is Stephanie Snell's son and is a law enforcement officer in the Kings County
10    Sherriff's Office. (*Id.*) Deshawn Snell indicated he had a friend in the Coroner's Office from
11    whom he could obtain information. (*Id.*) "The hypertension death diagnosis was allegedly
12    provided by Deputy Coroner Brabant, who further stated that 'those people commonly die from
13    hypertension.' Plaintiffs understand the reference to 'those people' to refer to African-American
14    people." (*Id.*)

15      In early October 2022, plaintiffs received Snell's death certificate and "what purports to
16    be a Coroner's report" from defendant Deputy Coroner Blackburn, who had written the report and
17    replaced Brabant as the official communicating with plaintiffs. (*Id.* at ¶ 17.) According to
18    plaintiffs, that report was "rife with inaccuracies and inconsistencies." (*Id.*) The report
19    incorrectly stated Snell was born in Minnesota, when he was actually born in Mississippi; the
20    cause of death was listed as hypertensive cardiovascular disease despite Snell having no
21    predictive history of hypertension or heart issues; and the report incorrectly stated that Snell had a
22    history of hypertensive cardiovascular disease, was obese, and displayed no signs of trauma,
23    "which contradicts reports Plaintiffs received of Darrell's having a bleeding head injury and
24    broken teeth prior to his being pronounced deceased at Adventist Community Medical Center in
25    Hanford, California." (*Id.* at ¶ 18.)

26      "Perhaps most significantly, at the time that the cause of death was revised to state
27    hypertensive cardiovascular disease, Darrell's heart had already been harvested, examined and
28    deemed sufficiently healthy to be transplanted into another individual." (*Id.* at ¶ 19.) Plaintiffs

allege on information and belief that a fatally damaged heart would never have been accepted for transplantation. (*Id.*) They find it difficult to understand how the medical providers involved could make a hypertensive cardiovascular disease diagnosis after Snell's heart had already been harvested. (*Id.*) The complaint also casts doubts on the physician who confirmed Snell's death assessment: Dr. Evan Matshes, a San Diego based physician "who never saw Darrell's body nor did any of his own examination." (*Id.* at ¶ 20.)

Snell's heart was received by Artivion Pathology in Kennesaw, Georgia on June 29, 2022. (*Id.* at ¶ 21.) Artivion's laboratory examination concluded that the heart was normal in all respects and noted that it had also been screened at a laboratory in San Ramon, California before being transported to Georgia. (*Id.*) Thus, Snell's heart was "examined and found to be normal and acceptable for transplantation by two competent, accredited laboratories." (*Id.*) Plaintiffs' requests for clarification and additional information from the Coroner's Office since October 2022 have all gone unanswered. (*Id.* at ¶ 22.) They now bring this suit seeking answers regarding the circumstances of Snell's death. (*Id.* at ¶ 23.)

Based on the foregoing, the complaint requests only equitable relief, asserting four claims. (*Id.* at ¶¶ 24–41.) First, a 42 U.S.C. § 1983 claim against all defendants seeking to vindicate plaintiffs' liberty interest in having a sibling relationship unimpaired by government interference under the Due Process Clause of the Fourteenth Amendment. (*Id.* at ¶¶ 24–27.) Second, a separate 42 U.S.C. § 1983 claim against defendant Brabant for denying plaintiffs the right to non-discriminatory public services in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at ¶¶ 28–31.) Plaintiffs' third and fourth claims are for declaratory and injunctive relief under 28 U.S.C. § 2201; and California Code of Civil Procedure §§ 526 and 1060, respectively. (*Id.* at ¶¶ 32–41.) As to the specific relief requested in their third and fourth claims, plaintiffs seek an order "requiring the defendants to turn over their complete files to them, including any retained samples and aliquots of biological materials retained." (*Id.* at ¶ 23.)

On September 24, 2024, defendants filed a motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 15.) Plaintiffs filed an opposition to the motion on October 8, 2024, and defendants filed a reply on October 18, 2024. (Docs. 16, 17.)

4

1  On October 28, 2024, plaintiffs filed objections to defendant's reply, contending that it improperly raises new arguments not presented in the motion to dismiss. (Doc. 18.) Specifically, plaintiffs object to the portion of the reply which argues that they have failed to state a claim under the Equal Protection Clause. (*Id.*)

Regarding plaintiffs' objections, the motion to dismiss does—albeit briefly—argue that an equal protection violation is not sufficiently alleged in the complaint. (Doc. 15-1 at 6.) Plaintiffs' opposition responds to this argument by setting forth the requirements to establish an equal protection claim, discussing several cases which illustrate how certain elements can be established, and noting that "to the extent the defendants' [sic] allege a failure to state a claim, their argument should be rejected." (Doc. 16 at 10–12.) In addressing the equal protection claim, the reply can be fairly characterized as responding to the opposition by distinguishing the cases and arguments raised therein, rather than raising "new" arguments. (Doc. 17 at 2–4.) *See Applied Materials, Inc. v. Demaray LLC*, No. 5:20-CV-05676-EJD, 2020 WL 8515132, at *1 (N.D. Cal. Dec. 16, 2020) ("[e]vidence submitted with a reply brief is not new evidence when it is submitted to rebut arguments raised in the opposition brief."); *Afifeh v. Ahmadabadi*, No. 2:22-CV-00928-SB-AFM, 2022 WL 3016147, at *1 (C.D. Cal. July 5, 2022) (finding argument initially raised in motion to dismiss but presented in greater detail in reply brief was not new argument). Accordingly, plaintiffs' objections are overruled.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

**A.      Fourteenth Amendment Substantive Due Process**

At the outset, it is necessary to clarify plaintiffs' theory of liability with respect to their first claim. The complaint generally asserts a Fourteenth Amendment violation and specifies that "[t]he liberty interest of Plaintiffs to have a sibling relationship unimpaired by government interference is well-recognized as a 14th Amendment substantive due process right." (Doc. 1 at ¶ 26.) Based on this allegation, defendants argue that plaintiffs' first claim should be dismissed for lack of standing. (Doc. 15-1 at 5.) Defendants cite to *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1991), *as amended on denial of reh'g* (June 16, 1992) for the proposition that "there is no recognized liberty interest in a sibling relationship between adult siblings." (*Id.*) Plaintiffs appear to concede this point in their opposition. They refer to *Ward* as "establishing that siblings cannot sue state actors who kill a brother for a deprivation of their substantive due process rights of familial relations, because that right does not extend to them." (Doc. 16 at 11.) They characterize *Ward* as "inapposite" without further explanation, but it appears from their opposition that plaintiffs have essentially abandoned a substantive due process theory of liability

6

and instead fall back on the alleged equal protection violation asserted in their second claim. (*See generally* Doc. 16.)

Accordingly, defendants' motion to dismiss plaintiffs' first claim is granted. This claim is dismissed pursuant to Rule 12(b)(6) rather than for lack of standing because *Ward* forecloses plaintiffs' substantive due process theory of liability. *Ward*, 967 F.2d at 284 ("Neither the legislative history nor Supreme Court precedent supports an interest for siblings consonant with that recognized for parents and children.").[5] In light of *Ward*, as plaintiffs cannot demonstrate a constitutionally-protected liberty interest in their sibling relationship with Snell, this claim is dismissed without leave to amend.

## B.     Equal Protection

As to plaintiffs' second claim, defendants contend that it is not supported by sufficient factual allegations and fails to plausibly establish a violation of plaintiffs' right to the non-discriminatory provision of public services.[6] (Docs. 15-1 at 6; 17 at 2–4.) For the reasons explained below, the Court agrees.

42 U.S.C. § 1983 provides a private right of action against anyone who, "under color of" state law, causes a person to be subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 does not

---

[5] As the Ninth Circuit has recognized, the issue of Article III standing is distinct from the merits of a substantive due process claim. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1109–10 (9th Cir. 2014) (finding plaintiffs had standing but their substantive due process claim failed on merits because they had no property interest in remains of their deceased sibling under California law).

[6] Defendants also advance two other arguments. First, they briefly suggest that the holding in *Ward* also applies to this claim. (Doc. 17 at 2.) That argument is misplaced as *Ward* did not consider equal protection; it addressed only intimate-association claims brought by adult siblings under a Fourteenth Amendment substantive due process theory. *See Ward*, 967 F.2d at 284. Second, defendants argue that plaintiffs cannot maintain a private right of action in this case because a coroner's duty to investigate is discretionary under California law, relying on *Villamor v. Madera Cnty. Sheriff Dep't*, No. 1:12-CV-00644-AWI, 2012 WL 4468758 (E.D. Cal. Sept. 27, 2012). (*See* Doc. 15-1 at 6.) Defendants' argument misconstrues *Villamor*, which merely explained that an alleged breach of a coroner's discretionary duty does not establish a basis for liability for breach of a "mandatory duty" under California Government Code section 815.6. *Villamor*, 2012 WL 4468758, at *2. Defendants' attempt to extend that narrow holding to the equal protection claim advanced in this action is unpersuasive.

1  create substantive rights; it merely serves as the procedural device for enforcing substantive
2  provisions of the Constitution and federal statutes." *Crumpton v. Gates*, 947 F.2d 1418, 1420
3  (9th Cir. 1991) (citing *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 617 (1979)).  Under
4  the Equal Protection Clause of the Fourteenth Amendment "[n]o State shall . . . deny to any
5  person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.  That
6  language "is essentially a direction that all persons similarly situated should be treated alike."
7  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  The Supreme Court
8  has emphasized that "the 'core purpose' of the Equal Protection Clause[ is] 'do[ing] away with all
9  governmentally imposed discrimination based on race.'" *Students for Fair Admissions, Inc. v.*
10 *President & Fellows of Harvard Coll.*, 600 U.S. 181, 205–06 (2023) (quoting *Palmore v. Sidoti*,
11 466 U.S. 429, 432 (1984)).

12 "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of
13 the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or
14 purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v.*
15 *City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).  In this context, discriminatory purpose
16 "implies more than intent as volition or intent as awareness of consequences.  It implies that the
17 decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of,
18 not merely in spite of, its adverse effects upon an identifiable group." *Pers. Adm'r of*
19 *Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (internal citation and quotation marks
20 omitted).

21 "The right to non-discriminatory administration of protective services is clearly
22 established." *Elliot-Park v. Manglona*, 592 F.3d 1003, 1008 (9th Cir. 2010).  And, as set forth
23 above, plaintiffs allege that "[t]here is a cloud of mystery regarding whether and the extent to
24 which Darrell's death was investigated." (Doc. 1 at ¶ 9.)  However, the complaint fails to allege a
25 sufficient factual basis to infer the defendant acted with a discriminatory purpose.  A review of
26 the cases on which plaintiffs rely makes this clear.  For example, the Ninth Circuit's decision in
27 *Elliot-Park* illustrates the kinds of allegations which establish an equal protection violation. *See*
28 592 F.3d at 1005–06.  That case concerned a collision between a Micronesian drunk driver and a

1    Korean driver. *Id.* The investigating police officers, who were all Micronesian, did not test the
2    Micronesian driver for intoxication or arrest him for drunk driving despite "obvious signs of
3    intoxication" and even though the driver told an officer that he had "blacked out" while driving.
4    *Id.* at 1006. The Korean driver sued the officers, arguing that their failure to investigate or arrest
5    the drunk driver was motivated by racial animus against Koreans. *Id.* The plaintiff claimed that
6    one of the officers who responded to her accident "fully investigated another drunk driving
7    accident that occurred the same evening where the victim was Micronesian but the driver wasn't."
8    *Id.* Notably, on appeal, "[t]he officers [did not] dispute that Elliott ha[d] pled facts from which a
9    trier of fact could infer racial discrimination." *Id.* From these allegations, the Ninth Circuit found
10   that the officers' alleged discriminatory failure to arrest and investigate "violated equal
11   protection." *Id.* at 1008. In contrast, the allegations in plaintiffs' complaint do not permit the
12   Court to infer such discrimination here.
13          *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988), another case relied on by
14   plaintiffs, is also instructive in considering discriminatory purpose. In that case, the district court
15   denied a pro se litigant's request to amend her equal protection claim and dismissed her complaint
16   with prejudice. *Balistreri*, 901 F.2d at 700. In holding that the district court abused its discretion,
17   the Ninth Circuit "found that the plaintiff, a victim of domestic violence who sued the police for
18   failing to protect her, alleged sufficient facts to suggest animus against her because she is a
19   woman." *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995) (discussing *Balistreri*), *as amended*
20   *on denial of reh'g* (Jan. 12, 1996). For example, the complaint alleged that an officer stated he
21   did not blame the plaintiff's husband for hitting her because of the way she was "carrying on."
22   *Balistreri*, 901 F.2d at 701. The Ninth Circuit reasoned that "[s]uch remarks strongly suggest an
23   intention to treat domestic abuse cases less seriously than other assaults, as well as an animus
24   against abused women." *Id.*
25          In this case, plaintiffs correctly argue that the statement allegedly made by defendant
26   Brabant—"those people commonly die from hypertension"—is "flippant and dismissive," but this
27   isolated statement is insufficient, by itself, to support the inference that defendant Brabant had a
28   discriminatory intent on account of race. *Compare Baptiste v. LIDS*, 17 F. Supp. 3d 932, 952

9

(N.D. Cal. 2014) (finding phrase "you people" offensive but not directly suggesting racial animus), *with Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987) (derogatory racial slurs made by police demonstrate racial animus supporting claim of malicious prosecution violating equal protection). Unlike the blatant victim blaming in *Balistreri*, or the clear favoritism in *Elliot-Park*, there are significant inferential gaps in plaintiffs' conclusory allegations that Brabant's isolated statement stemmed from racial animus and negatively impacted the investigation into Snell's death.

Other allegations in the complaint (such as mistakes in the coroner's report, defendants' alleged failure to cooperate, and the fact that Snell's heart was deemed healthy enough for transplantation) may sufficiently allege mishandling by the coroner's office, but they do not, without more, support an inference of discriminatory intent. Plaintiffs cite *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130 (9th Cir. 2003), in support of their argument that such mishandling is circumstantial evidence of discriminatory intent. In *Flores*, the Ninth Circuit considered an equal protection claim against public school administrators who failed to respond to complaints of student-to-student anti-homosexual harassment despite being aware that the school district's policies did not tolerate harassment of any kind. *Id.* at 1132–33, 1135. *Flores* is distinguishable because there was extensive direct evidence of students' discriminatory insults related to sexual orientation. *Id.* at 1132–33. Moreover, in failing to enforce the school district's anti-harassment policies, the defendants treated the plaintiffs' complaints of harassment differently from other types of harassment. *Id.* at 1135. Under these circumstances, "[t]he record contain[ed] sufficient evidence for a jury to conclude that the defendants intentionally discriminated against the plaintiffs in violation of the Equal Protection Clause." *Id.* at 1138. Here, in contrast, the complaint lacks any comparable allegations of direct animus and does not allege that defendants treated plaintiffs differently from others who were similarly situated.

Several of the other cases on which plaintiffs rely are either of little help in examining the sufficiency of their equal protection claim, or indicate that conclusory allegations similar to those in the complaint are insufficient to establish an equal protection claim. *See Est. of Macias v. Ihde*, 219 F.3d 1018, 1020 (9th Cir. 2000) (remanded for district court to consider *in the first instance*

whether defendants deprived decedent of her right to equal protection); *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002) (considering First Amendment issues, not an equal protection claim); *Navarro*, 72 F.3d at 717 ("[A]side from the conclusory allegation that the County's custom of not classifying domestic violence calls as an emergency discriminates against abused women, the Navarros have failed to offer any evidence of [] invidious intent or motive.").

While plaintiffs correctly note that "diminished [public] services . . . don't satisfy the government's obligation to provide services on a non-discriminatory basis," *Elliot-Park*, 592 F.3d at 1007, they fail to allege how the services they received were diminished relative to those provided to other individuals. The complaint does not allege any standard practice governing the circumstances at issue or how defendants' conduct deviated from the norm. *See Hines v. Youseff*, 914 F.3d 1218, 1233 (9th Cir. 2019) ("Implicit in our holding in [*Elliot-Park*] was the fact that police officers typically arrest drunk drivers. The officers diverged from the norm, allegedly because of racial animus.").

Plaintiffs cite to *Thomas*, 534 U.S. at 325, for the proposition that evidence evincing "a pattern of unlawful favoritism" can support a finding of discrimination, but they do not point to any such pattern in their complaint. Plaintiffs also do not identify any relevant California law that might be implicated. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) ("[T]he Coroner had a duty under state law to make a reasonable attempt to locate the family."). The crux of plaintiffs' complaint is that, despite receiving a coroner's report and death certificate, they are suspicious of the results and dissatisfied with the difficulties involved in obtaining them. However, even drawing all reasonable inferences in their favor, the complaint lacks factual allegations from which to infer that defendants' actions were "motivated by a discriminatory purpose." *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022).

For these reasons, plaintiffs have failed to plausibly allege an equal protection violation. Defendants' motion to dismiss this claim is granted. Leave to amend this claim to cure the deficiencies identified in this Order is granted, to the extent plaintiffs may be able to allege further details supporting an inference of discrimination by the defendants. *See United Data Servs., LLC v. Fed Trade Comm'n*, 39 F.4th 1200, 1208 (9th Cir. 2022) (leave to amend should

be given if amendment could cure pleading defect).[7]

**CONCLUSION**

For the reasons explained above:

1. Plaintiffs' objections (Doc. 18) to defendants' reply are overruled;

2. Defendants' motion to dismiss (Doc. 15) is granted;

3. The claims asserted in plaintiffs' complaint are dismissed, with leave to amend granted as to the second claim (equal protection); and

4. Plaintiffs may file a first amended complaint consistent with this Order within 21 days of the date of this Order. If plaintiffs fail to file a timely amended complaint, the Court will dismiss all claims with prejudice and enter judgment for defendants.

IT IS SO ORDERED.

Dated:   December 8, 2024

UNITED STATES DISTRICT JUDGE

---

[7] Plaintiffs' claims for declaratory and injunctive relief under 28 U.S.C. § 2201(a) and Cal. Civ. Proc. Code § 1060 need not be addressed because, given the dismissal of the § 1983 claims, there is no "actual controversy" before the Court.